CUNNINGHAM and others *v.* SWITZERLAND MARINE INS. CO. and others.[1]

(*District Court, S. D. New York.* December 31, 1885.)

1. MARINE INSURANCE — EXPENSES OF LITIGATION — SUE AND LABOR CLAUSE— PREVIOUS SUITS—SEAWORTHINESS OF VESSEL—ESTOPPEL.

Certain insurance companies, in conjunction with cargo owners, defended against a claim on a bottomry bond. The cargo was finally released from the claim. Afterwards, on suit brought by the cargo owners against the insurance companies, under the "sue and labor" clause in the policies, to recover the expenses of defending the bottomry suits, the company set up the unseaworthiness of the vessel, which they had not utilized as a defense in the previous suits. It appearing that such a defense would not have availed in the former suits, and that in part, at least, at the time of the former litigation the condition of the vessel was unknown to the companies, and that libelants were not misled in any way by the former assistance of the companies, *held,* that the companies were not estopped in this litigation from using such a defense, nor was there anything in the above facts to prevent an inquiry in this suit into the question of unseaworthiness.

2. SAME—UNSEAWORTHINESS OF VESSEL—POLICY OF INSURANCE.

The evidence showing that there were facts tending to indicate unseaworthiness, unless explained, and no explanation being offered, *held,* that, as

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

the vessel was unseaworthy when she sailed, the policies of insurance never attached, and cargo owners could not recover of the insurance companies the expenses of defending the former suits.

In Admiralty.

*Wheeler & Souther,* for libelants.

*Butler, Stillman & Hubbard,* for respondents.

BROWN, J. The above libels were filed by cargo-owners to recover the expenses of defending a suit on a bottomry bond, under the "sue and labor" clauses of certain policies of insurance issued by the respondents upon the cargo of the Julia Blake, from Rio to New York. On the voyage the vessel put into St. Thomas, where extensive necessary repairs were made, in order to procure which a bottomry bond was given to the Bank of St. Thomas upon her hull and cargo. The vessel with her cargo uninjured, subsequently arrived in New York. The vessel, freight, and cargo were thereupon libeled for the enforcement of the bottomry bond. Practically no defense in that suit was made as respects the ship and freight. The controversy as regards the cargo was carried to the supreme court. The decisions of this court and of the circuit court were there affirmed, and the cargo released on the ground that no communication was had with the owners of the cargo prior to executing the bottomry bond. *The Julia Blake,* 16 Blatchf. 472; S. C. 107 U. S. 418; S. C. 2 Sup. Ct. Rep. 692.

At first the insurers employed proctors and counsel to defend against the claim on bottomry. They appeared for the owner of the vessel, and answered in behalf of the owner; and also as agent or carrier, in behalf of the cargo. Some months afterwards the libelants, owners of the cargo, themselves intervened and answered separately by proctors and counsel of their own; and, after the decree in the district court, they represented mainly, if not solely, the interests of the cargo in that suit. The insurance companies had previously agreed to pay any sum which might be fixed by the average adjusters as general average. The libelants now sue for their expenses and counsel fees in that litigation.

In the present action the respondents have set up in defense the unseaworthiness of the vessel when she left Rio, and allege that the policies consequently never attached. As the claim in suit rests upon the stipulations of the policies only, there can be no recovery if the policies never attached, nor became operative as respects the cargo. It is urged that this defense ought not to be regarded as made in good faith, because no such ground was taken in the previous litigation, and because the insurance companies did not act upon that theory; but during the progress of the action in the district court, at least, were active in defeating the bottomry bond upon other grounds. Two answers are given to this contention that I think are sufficient. No issue of unseaworthiness would have been material in the former action. On the contrary, the more unseaworthy the ship the greater would be

her need of repairs at St. Thomas, where the bottomry bond was executed. The facts affecting the question of the seaworthiness of the ship at Rio were not at first known to the insurers. When they were, in a measure, apprised of the facts, the counsel of the insurers stated to the libelants that these facts raised a question concerning their liability as insurers, although not material in the pending litigation. But that merely afforded to the insurance companies an additional ground of defense as insurers of the cargo. Considering the difficulties of establishing that defense before a jury, the insurance companies could not be considered as wholly indifferent whether the claim on bottomry was defeated upon another ground. The assistance of the insurance companies in the former litigation for a time, in no way misled the libelants, or induced them to incur any expense which they would not otherwise have incurred. There is no element, therefore, of estoppel in the case; nor do I find anything in the circumstances that precludes an inquiry into the seaworthiness of the vessel, which is for the first time presented in this suit. On that point the evidence of the master, whose deposition was taken in this suit, but who was not examined in the former suit, is very strong, and shows clearly that the vessel was grossly unseaworthy when she sailed. There are several considerations which suggest a suspicion of great exaggeration in the master's testimony; but, after making all possible allowances for such exaggeration, the undisputed facts concerning the condition of the vessel when she arrived at St. Thomas, and the absence of any severe weather on her passage, would seem to necessitate the inference that she was unseaworthy when she left Rio. When sailing in only a fresh breeze, as it would appear, first her topmast, and then her cross-trees, gave way and fell down, and portions of the foremast were carried away. The testimony is that they were exceedingly rotten, and many parts of the hull were in a similar condition. Such extraordinary accidents require explanation, or the vessel must be held to have been unseaworthy when she sailed. No explanation was given; and it is not suggested that a satisfactory explanation through any extraordinary weather, or other cause, could be proved. I am obliged to hold, therefore, that the vessel was unseaworthy when she left Rio; that the respondents never became liable upon the policies; and, consequently, that they are not answerable for the expenses claimed. The libel is therefore dismissed, with costs.